Glenda MEISSL, Plaintiff,

v.

Jo Anne B. BARNHART, Defendant.

No. CV 04–3044–SGL.

United States District Court,
C.D. California.

May 25, 2005.

Steven G. Rosales, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for Glenda Meissl, Plaintiff.

Marcus M. Kerner, AUSA—Office of U.S. Attorney, Santa Ana Branch–Civil Div, Santa Ana, CA, for Defendant.

## ORDER AFFIRMING COMMISSIONER'S DECISION DENYING BENEFITS

LARSON, United States Magistrate Judge.

Glenda Meissl stopped working in 1994 after her eighteen-year-old son was killed in a car accident. Meissl thereafter descended into a reclusive state for the next eight years, remaining in bed and assuaging her emotional pain with food. Meissl, who stands five feet four inches tall, steadily gained weight until she weighed 320 pounds, which led to her developing a number of physical maladies—including hypertension, diabetes, and degenerative changes in her spine. As Meissl recounted: "After my son died, I stayed in bed for a long time, and I gained massive weight. And my body just, like, deteriorated on me, and that's where I lost a lot. And I didn't realize what I was doing to myself until after I realized how big I am and how I couldn't stand up.... [I ate food] because it was the only thing that took the pain away.... I don't want to be chained to a bed anymore.... I'm 47 years old, and for the last eight years, I have been living like a 70–year–old person." (A.R. at 620, 621, 623).

Meissl applied for supplemental security income benefits on June 13, 2001, and a hearing was later held before an administrative law judge ("ALJ") to consider the merits of her application. The ALJ determined that Meissl's ailments impacted her ability to work in the following manner: "[T]he claimant can perform sedentary work (lift/carry 10 pounds maximum, sit for about six hours total in an eight hour workday, stand/walk two hours total) [, involving no more than] occasional balancing, bending, kneeling, crawling and stair and ramp climbing [and no] climbing ropes, ladder or scaffolds[, and involving] simple tasks performed at a routine pace." (A.R. at 19). With such a residual functional capacity ("RFC"), the ALJ determined, and a vocational expert so testified, that Meissl was not disabled because she could still perform other work as a telephone information clerk and as a stuffer (machine packager). (A.R. at 23–24, 626). Key to the present case is the ALJ's finding that Meissl's ailments limited her to work involving simple tasks performed at a routine or repetitive pace. Meissl asserts that such a restriction is inconsistent with her ability to perform any of the other work as the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT") require a higher reasoning capacity than that allowed by the ALJ's RFC.

Meissl argues that the rub comes from the fact that the other work, which the ALJ pointed to as something which she could perform and, hence, the reason for denying her benefits, requires a level of reasoning beyond that contemplated as "simple, repetitive."

The DOT describes the stuffer job as requiring a reasoning level of two out of a six-point scale.[1] A level two reasoning indicates that the job requires the person to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT 1011 (4th ed. rev.1991). This leaves the question of whether such a reasoning level is consonant with a limitation to simple, repetitive mental tasks.

The Commissioner argues that it does, but does so by pointing to a separate vocational consideration listed in the DOT—a job's specific vocational preparation ("SVP") score. The stuffer job is considered an unskilled one under the DOT's SVP scores. The Commissioner contends that because the job had an SVP level of two, which essentially is unskilled work, the vocational expert's opinion does

---

1. The telephone information clerk job, the other job cited by the ALJ as one Meissl could perform, requires a reasoning level of three. The ALJ's step five decision would still be supported by substantial evidence even if Meissl could perform only the other work as a stuffer with its corresponding lower reasoning levels. The vocational expert testified that "[n]ationally, approximately 38,000" such positions exists and that in the local economy, 1,700 such jobs existed. (A.R. at 626). Under the Social Security Act, an individual is "disabled" if her impairment prevents her from engaging in "any other kind of substantial gainful work which exists in the national economy," the latter term meaning jobs "which exists in significant numbers" in the area where the claimant lives. 42 U.S.C. § 423(d)(2)(A). As the statute makes clear the focus is on the number of jobs available, not the number of occupations. Even with the one occupation as a stuffer, the vocational expert noted that there were thousands of jobs in that field from which Meissl could seek employment. Such a sizable job base is sufficient to constitute a "significant number." See Barker v. Secretary of Health Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (availability of 1,266 jobs held to be a "significant number"). Accordingly, the Court will not pass on the question whether such a higher reasoning level encompassed by the telephone information clerk job would be consistent with Meissl's mental RFC.

not conflict with the DOT. (Joint Stipulation at 12). Unskilled work is defined under Social Security regulations as requiring little or no judgment to do simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. § 416.968(a). Because the *job duties* for Meissl's work as a stuffer would be simple ones, the Commissioner posits that the reasoning required to perform those jobs must necessarily be simple as well and, hence, not in conflict with the ALJ's "simple, repetitive" functional restriction.

The problem for the Commissioner is that she is conflating two separate vocational considerations. Other courts decided that, contrary to the Commissioner's argument here, the SVP level in a DOT listing indicating unskilled work, does not address whether a job entails only simple, repetitive tasks. *See, e.g., Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir.1997); *Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D.Okla. Oct.15, 2004); *Hall v. Barnhart,* 2004 WL 1896969, at *3 (D.Me. Aug.25, 2004). A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. DOT at 1009. A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves. As one court noted, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." *Hall–Grover v. Barnhart,* 2004 WL 1529283, at *4 (D.Me. April 30, 2004). Here, the one vocational consideration directly on point with the limitation contained in the RFC is a job's reasoning level score.

This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.

As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental

RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3)("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking … apprehend the most abstruse classes of concepts" at level six). DOT at 1010–1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling–Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). See DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir.2005)(holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); Money v. Barnhart, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004)("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repeti-

tive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Accordingly, the Commissioner's decision denying Meissl supplemental benefits is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

### JUDGMENT

Pursuant to the Order Affirming Commissioner's Decision Denying Benefits,

IT IS ADJUDGED that the decision of the Commissioner is affirmed and the matter dismissed with prejudice.