Donald L. SKEENS, Jr., Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. C12–5070–RAJ.

United States District Court, W.D. Washington, at Seattle.

Oct. 9, 2012.

Eitan Kassel Yanich, Law Offices of Eitan Kassel PLLC, Olympia, WA, for Plaintiff.

Jordan Goddard, Social Security Administration, Kerry Jane Keefe, U.S. Attorney's Office, Seattle, WA, for Defendant.

## ORDER OF REMAND

RICHARD A. JONES, District Judge.

The Court has reviewed the entire record, including the Administrative Record, the memoranda of the parties, and the Report and Recommendation of United States Magistrate Judge Mary Alice Theiler. It is therefore ORDERED:

(1) The Court adopts the Report and Recommendation;

(2) The Court REMANDS this matter for further administrative proceedings; and

(3) The Clerk shall direct copies of this Order to all counsel and to Judge Theiler.

DATED this 8th day of October, 2012.

## REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL

MARY ALICE THEILER, United States Magistrate Judge.

Plaintiff Donald L. Skeens Jr. proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1964.[1] He completed high school (special education) and previously worked as a photocopier and a construction worker. (AR 182.)

Plaintiff filed applications for DIB and SSI on January 16, 2007, and October 19, 2007, respectively. (*See* AR 159–165.) Those applications were denied initially and on reconsideration, and Plaintiff timely requested a hearing. (AR 79–81, 84–85, 90–91.)

On June 8, 2010, ALJ Gary Suttles held a hearing, taking testimony from Plaintiff and a vocational expert. (AR 32–76.) On June 28, 2010, the ALJ issued a decision finding Plaintiff not disabled. (AR 17–27.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on November 22, 2011 (AR 1–5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had attempted to return to work in 2002 and in 2005, but had not engaged in substantial gainful activity since October 19, 2001, the alleged onset date. (AR 19.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found Plaintiff's learning disorder (cognitive impairment), depression, and status-post right index finger injury to be severe. (AR 19.) Step three asks whether a claim-

ant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 19–23.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with the following exertional limitations: he can lift and/or carry up to 20 pounds maximum occasionally, 10 pounds frequently; walk 6 of 8 hours; stand/sit 6 of 8 hours. The ALJ found that Plaintiff has "unlimited pushing/pulling and gross and fine dexterity but occasional fingering, grasping, handling, and feeling with the right index finger." (AR 23.) Plaintiff's left hand is normal. Plaintiff cannot climb ladders, ropes, or scaffolds, or run. Plaintiff can have "limited exposure" to heights, dangerous machinery, and extreme cold. (AR 23.) He can climb stairs, bend, stoop, crouch, crawl, balance, twist, and squat. As to mental limitations, the ALJ found that Plaintiff can get along with others, respond and adapt to workplace changes and supervision, understand simple 1– to 2–step instructions, and concentrate and perform simple tasks. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the Medical–

---

1. Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

Vocational Guidelines and with the assistance of the vocational expert, the ALJ found Plaintiff capable of performing other jobs, such as work as courier, café attendant, and marking clerk. (AR 26.)

■ This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.2002).

Plaintiff argues the ALJ erred by (1) failing to state any reason to reject the opinions of Mark Heilbrunn, M.D., and Norma Brown, Ph.D. and yet failing to include all of limitations identified by them; (2) failing to incorporate all of Plaintiff's limitations in the hypothetical question posed to the vocational expert (VE); (3) improperly discrediting the Plaintiff's testimony; and (4) failing to consider all lay evidence. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

### Medical Evidence[2], RFC Assessment & Vocational Expert Testimony

Three of Plaintiff's assignments of error converge into one issue: whether the ALJ included all limitations contained in the credited opinions of examining physicians Mark Heilbrunn and Norma Brown in his RFC assessment and in his hypothetical posed to the VE. The Commissioner contends that the ALJ properly translated the opinions of Drs. Heilbrunn and Brown into functional limitations described in the RFC assessment and in the hypothetical, and that any translation error was harmless.

### Legal Standards

■ In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for " 'clear and convincing' " reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without " 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than

---

**2.** Plaintiff's Opening Brief contains a recitation of "other medical evidence" that is not "inconsistent with the medical opinions of Dr. Heilbrunn and Dr. Brown." (Dkt. 13 at 7–8.) Plaintiff provides no argument or analysis of this evidence, and does not identify any particular error, but argues simply that the

"court should hold that the ALJ's failure to properly evaluate all of the medical evidence is legal error requiring reversal." (Dkt. 13 at 8.) Without more, the Court—following the Commissioner's lead (*see* Dkt. 16–1 at 6:5–7)—declines to address this further.

the doctors', are correct." *Id.* (citing *Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir.1988)).

At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96–8p. RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96–8p. The ALJ must consider the limiting effects of all of a claimant's impairments, including those that are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96–8p.

*Dr. Heilbrunn's Opinions*

In this case, the ALJ described the opinions of Dr. Heilbrunn without assigning any particular weight:

> The results of a consultative examination performed in May 2007 revealed a normal hand coordination on the left but decreased fine and dexterous movements and manipulating with the right hand. There was no hand tremor. His left hands, fingers, and thumbs were normal. On his right hand, his index finger had a contraction flexure of 30 degrees, increased tenderness at the proximial interphalangeal joint, and traumatic neuroma. His grip strength was 4–5/5 on the right with sparing of the index finger. Strength was normal in the left upper extremity. His sensory functions were decreased to 50% at the radial aspect and 20% at the ulnar aspect of the right index finger. The remainder of the fingers were normal. He did not have any flexion of the right distal interphalagneal joint of the index finger and flexion of the proximal interphalangeal joint of the index finger to 90 degrees. He was able to almost bend to the floor level. The examiner assessed that the claimant had limitation *in the*

> *use of the right hand* for continuous firm grasping, fine and dexterous movements and manipulating abilities, and for feeling on the index finger.

(AR 20 (citing AR 337–43) (emphasis added).) The Plaintiff argues that the ALJ erred in formulating the RFC assessment (AR 23) because he limited only Plaintiff's use of his right index finger, while Dr. Heilbrunn had found Plaintiff had limited use of his entire right hand for continuous firm grasping, fine and dexterous movements, and manipulation. Because the ALJ implicitly credited Dr. Heilbrunn's opinions, Plaintiff contends that the ALJ should have included all of the limitations identified by Dr. Heilbrunn in the RFC assessment.

■ Plaintiff's arguments are not well taken, because the ALJ's written RFC assessment and the entirety of the VE's testimony are consistent with the limitations identified by Dr. Heilbrunn. Dr. Heilbrunn found that Plaintiff has "a limitation in the use of the right hand for continuous firm grasping, fine and dexterous movements and manipulative abilities," and that his right index finger is limited in feeling and has pain that "limits his ability of use." (AR 341.) The ALJ incorporated that finding nearly verbatim in his RFC assessment: "The examiner assessed that the claimant had limitation *in the use of the right hand* for continuous firm grasping, fine and dexterous movements and manipulating abilities, and for feeling on the index finger." (AR 20 (emphasis added).)

During the hearing, the ALJ described Plaintiff's right-hand limitations in a slightly convoluted manner to the VE:

> [Plaintiff's] push/pull and gross fine is unlimited except in the right hand. I will say occasional fingering, occasional fingering (*sic*), grasping, handling, and feeling with the right index finger. The

rest of the hand, the fingering of the hands and the things of the fingers appears to be okay.

(AR 72–73.) In response, the VE testified that a person with an RFC as described by the ALJ could perform the jobs of marking clerk, cafeteria attendant, and deliverer. (AR 73–74.) To the extent that the ALJ retreated from Dr. Heilbrunn's opinions regarding Plaintiff's right-hand limitations beyond the index finger only in the phrasing of that hypothetical, this error was harmless because Plaintiff's attorney subsequently asked the VE a follow-up hypothetical that more completely summarized Dr. Heilbrunn's opinions as "a limitation in the use of the right hand for continuous firm grasping, fine and dexterous movements, and manipulating abilities, and for feeling on the index finger." (AR 74.) In response to Plaintiff's attorney's hypothetical variation, the VE reiterated his testimony that a person with those limitations could work as a deliverer, cafeteria attendant, or marking clerk because none "of the three jobs that I cited are particularly dexterous." (AR 75.)

Plaintiff takes issue with the VE's follow-up testimony regarding dexterity, arguing that the identified jobs actually *are* dexterous and that Plaintiff cannot perform the jobs in light of Dr. Heilbrunn's right-hand limitation for "continuous firm grasping, fine and dexterous movements and manipulating abilities" and the attendant index-finger pain. (AR 341.) First, with regard to the dexterity required to perform the VE's identified jobs, the VE's testimony is consistent with the Dictionary of Occupational Titles (DOT) because none of the jobs identified require particularly

high levels of dexterity.[3] Second, Plaintiff misquotes the DOT when contending that all three jobs require "constant" reaching and handling, and that one as requires "constant" fingering: the DOT defines all three jobs as requiring *frequent* reaching and handling, and one of the jobs as requiring *frequent* fingering (the others requiring occasional fingering).[4] (Dkt. 16–1 at 3–4 (citing DOT 311.677–010, 230.663–010, 209.587–034)). Dr. Heilbrunn's opinion did not preclude *frequent* grasping, fine/dexterous movements, or manipulating abilities, but only *continuous* uses. (AR 341.) Thus, Dr. Heilbrunn's opinions are not inconsistent with the VE's testimony and Plaintiff has not identified any error in the RFC assessment or the ALJ's step-five findings related to the limitations identified by Dr. Heilbrunn.

Lastly, Plaintiff's counsel asked the VE whether Plaintiff's right index finger pain, as described by Dr. Heilbrunn, would preclude Plaintiff's performance of the identified jobs, and the VE testified that it was "unclear"; that it "just depends on how severe the pain is and whether it's consistent or whether [INAUDIBLE] with his overall productivity." (AR 75.) Dr. Heilbrunn did not quantify the pain or specify how the pain would impair Plaintiff's use. *See* AR 341 ("[Plaintiff] has pain at the index finger, which also limits his ability of use."). In the absence of an identified, specific functional limitation, the Plaintiff cannot show that the ALJ's RFC assessment or related step-five findings fail to account for Dr. Heilbrunn's opinions in this respect, and therefore no error has been established.

---

3. The cafeteria attendant job requires low finger dexterity and middle-range manual dexterity. DOT 311.677–010. The deliverer position requires low finger and manual dexterity. DOT 230.663–010. A marking clerk position requires middle-range finger dexterity and low manual dexterity. DOT 209.587–034.

4. The DOT defines a "frequent" requirement as existing between 1/3 and 2/3 of the time, and a "constant" requirement exists more than 2/3 of the time. *See, e.g.,* DOT 209.587–034 (defining "frequently"); DOT 726.684–050 (defining "constantly").

## Dr. Brown's Opinions

The ALJ described the opinions of Dr. Brown, who completed Plaintiff's only mental examination of record, without assigning any particular weight:

The [Plaintiff] underwent a consultative psychological evaluation in September 2006. He alleged extreme difficulty understanding and remembering written and oral information. Upon mental status examination, he was oriented in all spheres. His attitude was very cooperative and he appeared motivated to do well. He was attentive throughout the test session. There were no signs of either suicidal or homicidal thinking. He did not appear to experience hallucinations or delusions. Cognitive testing revealed a verbal IQ of 76 (borderline range), performance IQ of 86 (low average range), and a full scale IQ of 79 which placed him in the borderline range. His ratings in the verbal comprehension was borderline, perceptual organization was average, working memory was extremely low, and processing speed was borderline. Achievement testing revealed a reading score in the High School grade equivalent range, spelling was in the 5th grade equivalent range, and arithmetic in the 4th grade equivalent range. It was assessed that his scores were indica[tive] of a cognitive disorder. His diagnoses were rule out cognitive disorder (not otherwise specified), mathematics disorder, and disorder of written expression. His global assessment of functioning (GAF) was assessed to be 50. It was noted that he required further testing to determine the extent of his memory problems.

(AR 20 (citing AR 291–301).) The ALJ later assessed Plaintiff's RFC, finding that he "can get along with others, respond and adapt to workplace changes and supervision, understand simple 1 to 2 step instructions and concentrate and perform simple tasks." (AR 23.) Plaintiff argues that the ALJ's RFC assessment fails to account for Plaintiff's markedly impaired memory, difficulty learning new skills, impaired pace, and impaired math and spelling ability, as found by Dr. Brown. (Dkt. 16–1 at 3 (citing AR 293–96).)

The Commissioner argues that the ALJ was entitled to rely on state agency consultant James Bailey, Ph.D., to translate Dr. Brown's opinions into workplace limitations. (Dkt. 14 at 8.) Dr. Bailey is a state agency medical consultant and, as such, he is a highly qualified specialist with expertise in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(5)(2)(i).

■ The Court agrees with the Commissioner. Dr. Bailey explicitly considered Dr. Brown's opinions and reasonably converted her medical opinions into concrete functional limitations for purposes of disability evaluation, which is his area of expertise. Dr. Brown opined that Plaintiff's abilities to reason, maintain sustained concentration and persistence, interact socially, and adapt were average or good, and those opinions are consistent with Dr. Bailey's functional assessment. (*Compare* AR 294 *with* AR 318–320.) Dr. Bailey likewise translated Dr. Brown's finding that Plaintiff has "[a]verage comprehension but significantly impaired Working Memory" into limitations on Plaintiff's ability to understand, remember, and carry out detailed instructions. (*Compare* AR 294 *with* AR 318.) Dr. Bailey's assessment that Plaintiff is not significantly limited in remembering locations and work-like procedures and remembering short and simple instructions (AR 318) is not inconsistent with Dr. Brown's opinions. *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir.2008) (explaining how an ALJ may translate mental limitations into concrete restrictions where the ALJ's

assessment is "consistent with restrictions identified in the medical testimony").

Plaintiff contends that the ALJ overlooked Dr. Brown's findings that Plaintiff had impaired memory, difficulty learning new skills, or impaired math and spelling ability, but Dr. Bailey explicitly considered Dr. Brown's findings regarding Plaintiff's "memory problems," "mathematics disorder" and "borderline intellectual functioning," and nonetheless concluded that he "retains the ability to understand, remember, and complete simple, repetitive tasks." (AR 320.) The ALJ was entitled to rely on Dr. Bailey's opinions regarding Plaintiff's concrete limitations, and in doing so, he did not err. *Stubbs–Danielson*, 539 F.3d at 1174; *see also* SSR 96–6p, 1996 WL 374180 (Jul. 2, 1996) (explaining how ALJs must consider a state agency consultant's assessment of a claimant's RFC).

Lastly, Plaintiff contends that the ALJ's RFC assessment fails to account for the implications of Dr. Brown's GAF score of 50. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM–IV–TR) (GAF of 41 to 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"). The ALJ mentioned Plaintiff's GAF score (AR 20), but Plaintiff contends that the ALJ should have interpreted the GAF score to mean that Plaintiff "would more likely than not have difficulty sustaining competitive employment." (Dkt. 16–1 at 5.) But Plaintiff's explanation is not the only reasonable interpretation of his GAF score, and has not shown that it was unreasonable for the ALJ to conclude that Plaintiff retained the ability to "respond and adapt to workplace changes and supervision, understand simple 1 to 2 step instructions and concentrate and perform simple tasks." (AR 23.) Particularly in light of the Commissioner's determination that the GAF scale "does not have a direct correlation to the severity requirements in

[the Social Security Administration's] mental disorders listings" (65 Fed.Reg. 50,746, 50,765–766 (Aug. 21, 2000)), the ALJ's reasonable interpretation should be affirmed. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### RFC Assessment & VE Testimony

In addition to the arguments related to the ALJ's RFC assessment addressed in the previous section, Plaintiff further contends that the ALJ erred by relying on the VE's testimony that Plaintiff could perform jobs requiring reasoning level 2. According to Plaintiff, a finding that he could perform jobs requiring reasoning level 2 is inconsistent with the ALJ's RFC assessment limiting him to understanding simple 1– to 2–step instructions and performing simple tasks. The Commissioner agrees that all of the jobs identified by the VE required reasoning level 2, but contends that Plaintiff is not precluded from performing such jobs under the ALJ's RFC assessment.

The DOT defines jobs requiring reasoning level 2 as requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, *available at* 1991 WL 688702 (1991). Reasoning level 1 requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

There is no Ninth Circuit authority defining the precise correlation between reasoning levels and functional limitations identified in an RFC assessment. Some district court cases emphasize that DOT

reasoning levels do not directly match functional limitations as defined by Social Security regulations. *See Meissl v. Barnhart,* 403 F.Supp.2d 981, 983 (C.D.Cal. 2005); *Bordbar v. Astrue,* 2011 WL 486540, at *3 (C.D.Cal.2011). Other unpublished cases reason that a limitation to understanding one- or two-step instructions correlates to reasoning level 1 jobs. *See Pouria v. Astrue,* 2012 WL 1977278, at *1–2 (C.D.Cal. Jun. 1, 2012); *Hamlett v. Astrue,* 2012 WL 469722, at *4 (C.D.Cal. Feb. 14, 2012); *Grigsby v. Astrue,* 2010 WL 309013, at *2 (C.D.Cal. Jan. 22, 2010). Others have specifically held that a limitation to one- or two-step instructions is consistent with jobs requiring reasoning level 1 *or* 2. *See, e.g., Lee v. Astrue,* 2010 WL 653980, at *10–11 (E.D.Cal. Feb. 19, 2010); *Seechan v. Astrue,* 2010 WL 1812637, at *10–11 (E.D.Cal. May 5, 2010); *Harrington v. Comm'r of Social Sec. Admin.,* 2008 WL 4492614 (S.D.Cal. Sept. 29, 2008).

In *Meissl,* the only published case on this issue within this circuit, the ALJ limited the claimant to simple tasks performed at a routine or repetitive pace, but also accepted a VE's testimony that Plaintiff could perform two jobs requiring a reasoning level of 2. 403 F.Supp.2d at 982. The court affirmed, reasoning:

> Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."
> The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of

one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling–Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart,* 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3d Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved— that is, not a high level of reasoning.

403 F.Supp.2d at 984–85 (quoting *Flaherty v. Halter,* 182 F.Supp.2d 824, 850 (D.Minn. 2001)).

Though the Commissioner emphasizes that *Meissl* found that a reasoning level 2 was consistent with a limitation to simple and routine work tasks, the Commissioner does not acknowledge that the ALJ's RFC assessment here is distinguishable from the assessment in *Meissl*: here, the ALJ specifically limited Plaintiff to simple tasks *with one- or two-step instructions*. *Meissl* does not address whether *this* limitation is inconsistent with reasoning level 2. While *Meissl* stands for the proposition that a limitation to simple tasks is not necessarily inconsistent with an ability to perform a job requiring reasoning level 2, Plaintiff was arguably more limited than the claimant in *Meissl*.[5]

The limitations identified by the ALJ in this case match more closely to the limitations described in *Pouria*, *Hamlett*, and *Grigsby*. In all three of these recent cases, the ALJs limited the claimants to jobs involving no more than two-step instructions, and the courts held that such a limitation corresponds to reasoning level 1. *See Pouria*, 2012 WL 1977278, at *3 ("[A] limitation to one- or two-step tasks corresponds to Reasoning Level One"); *Hamlett*, 2012 WL 469722, at *4 (A limitation of two steps of instruction corresponds to Level 1 reasoning); *Grigsby*, 2010 WL 309013, at *2 ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.").

Not all district courts in the Ninth Circuit have agreed with this analysis, however. Some courts focus on the fact that reasoning level 1 jobs are on the lowest end of the reasoning scale, and conclude that the ALJ's RFC assessment does not restrict the claimant to that degree. *See, e.g., Lee*, 2010 WL 653980, at *11; *See-*

*chan*, 2010 WL 1812637, at *10–11. In *Harrington*, the court determined that a one/two-step instruction limitation was compatible with reasoning level 2 in light of the other limitations described in the RFC assessment:

> The ALJ found that Harrington has the following residual functional capacity:
>
> The claimant can understand detailed but uncomplicated instructions and simple, one/two step instructions, can maintain concentration and attention for simple, repetitive work, can relate and interact with the public, supervisors, and co-workers, and can tolerate low and moderate to high stress work.
>
> Judge Parker did not limit Plaintiff to only having the ability to apply "commonsense understanding to carry out simple one- or two-step instructions" or only "deal with standardized situations with occasional or no variables," which is the essence of reasoning level one. DOT, No. 230.687–010 at 205. Rather, he found that Plaintiff can understand "detailed but uncomplicated instructions" and perform "simple, repetitive work." The residual functional capacity finding clearly puts Plaintiff beyond reasoning at level one.

2008 WL 4492614, at *10 (internal citations to the administrative record omitted). The *Harrington* court's approach requires a close reading of the ALJ's RFC assessment in order to determine how it compares to reasoning level requirements, and this approach has also been employed in this district. *See Morgan v. Astrue*, Case No. 11–422JLR, Report and Recommendation (Dkt. 22) at 10–15 (Nov. 28, 2011).

■ In this case, the ALJ's RFC assessment language is analogous to reason-

---

**5.** The Tenth Circuit case also cited by the Commissioner is likewise not precisely on all fours. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (concluding that a limitation to "simple and routine work tasks" was inconsistent with a reasoning level 3 job and "more consistent" with a reasoning level 2 job).

ing level 1 only. The ALJ specifically found that Plaintiff could understand "simple 1 to 2 step instructions" and "perform simple tasks." (AR 23.) The ALJ does not address the question of Plaintiff's ability to carry out detailed (though uninvolved) instructions, as is required in reasoning level 2 jobs. On remand, the ALJ should specifically address Plaintiff's ability to perform at the reasoning level required by the proffered jobs, with factual findings and appropriate references to the record.[6]

### Plaintiff's Credibility

The ALJ summarized Plaintiff's description of his impairments and how they affect his ability to work:

> [Plaintiff] alleged the inability to work due to the inability to bend the right forefinger due to previous torn nerve endings and ligaments. He also alleged problems staying focused and memory deficit. However, he indicated that he took psychotropic medication for only 1½ to 2 months. He denied receiving any psychotherapy after 2002. He reported that he received chiropractic care in the 1990's due to back pain related to a childhood back injury. He denied receiving any current medical treatment for recurrent back pain but indicated that at times, he takes over-the-counter

aspirin or Tylenol. He denied having any back injections or back surgery in the past. Regarding his functional capacity, he alleged the inability to sit for no more than 3 to 4 hours at one time, lift no more than 50 to 60 pounds, walk for up to one hour on a flat surface, and stand for up to one hour at one time. In reference to activities, he testified that he is able to drive a motorized vehicle, visit with his girl friend three times per week, visit his children, watch television, help his friend by washing dishes, and perform other activities for his friend. (AR 24.)

The ALJ found that Plaintiff's alleged "symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (AR 24) and provided three[7] specific reasons for discounting Plaintiff's allegations: (1) Plaintiff's lengthy work history, despite his cognitive impairments; (2) Plaintiff's daily activities; and (3) Plaintiff's lack of treatment or medications for his mental-health symptoms. (AR 24–25.)

### Legal Standards

■ In assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or

---

**6.** Plaintiff also briefly argues that the ALJ's hypothetical failed to include his pace limitations. (Dkt. 13 at 18–19.) But the ALJ's RFC assessment does not include a pace limitation, and neither Dr. Brown nor Dr. Bailey identified a pace limitation. Dr. Brown describes Plaintiff's limits in processing speed, but this limitation refers to the speed with which Plaintiff processes information, not the pace with which he completes work tasks. (AR 296.) Thus, because Plaintiff has not shown that the ALJ should have found a pace limitation with regard to completing work tasks (*see* AR 319 (describing a pace limitation for purposes of disability evaluation)), the ALJ did

not err by failing to include a pace limitation in the hypothetical.

**7.** The ALJ also notes Plaintiff's criminal history in this section, and Plaintiff contends that this was an improper reason to discount Plaintiff's credibility. (Dkt. 16–1 at 8.) Reading the section as a whole, however, it appears that the ALJ mentioned Plaintiff's criminal history to explain the timeline of Plaintiff's prior work, showing that his job ended because of incarceration and not because of impairments. (AR 24.) Thus, the Court concludes that the ALJ did not discount Plaintiff's credibility on account of his criminal history.

other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Id. See also Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir.2001). Plaintiff contends that the ALJ did not provide any legally valid reason to reject any of his testimony.

### Work History

■ The ALJ described the inconsistency between Plaintiff's work history and the debilitating symptoms he described experiencing due to his lifelong cognitive impairments:

> Despite the claimant's allegations of cognitive deficits, he worked steadily and successfully from 1981 to 2001. (Exhibit 3D). He reported that he stopped working in 2005 after he lost his job. At the previous job, he was laid off from work. It is noted that [ ] he was performing at [ ] "satisfactory" to "highly satisfactory" levels before he lost his job as a result of a reduction in force (RIF) employer action and not for any medical reason or alleged impairments. (See Exhibit 14F). In addition, it is noted that the claimant was incarcerated in 2003 for 13 to 15 months (through 2005).

(AR 24.) Plaintiff contends that he earned "little" between 1981 and 1987, and that his main job after that time with the Navy was an accommodated job for handicapped people. Thus, Plaintiff posits that the ALJ erred in viewing his work history as inconsistent with his allegations of cognitive deficits.

Unfortunately for Plaintiff, the record does not corroborate his characterization of the Navy job as "accommodated." Beyond his own description of the job as accommodating his tendency to get con-

fused (AR 183), Plaintiff relies exclusively on a 1986 letter written by a vocational rehabilitation counselor asking the personnel director at Bremerton Naval Base to consider hiring Plaintiff via the Severely Disabled Hiring Program. (AR 365.) The letter does not suggest that the job was accommodated, but only that Plaintiff was hired via this program. Furthermore, when Plaintiff's job was terminated, his termination letter referred to his job as a "competitive" (not "excepted," the term for a person performing accommodated work) employee. *See* AR 366. Thus, the record does not support Plaintiff's contention that he performed accommodated work.

Accordingly, Plaintiff's successful and lengthy work history does undermine his testimony that his cognitive impairments prevent him from working. When asked by the ALJ to name the biggest reason why he cannot work, the Plaintiff answered that he is "slow, I guess." (AR 60.) But Plaintiff has not shown that his cognitive condition has worsened over time, or that any of his previous jobs were terminated as a result of his cognitive impairments. (*See* AR 64–68 (describing the circumstances under which he lost his previous jobs: reduction in force, drug relapse, finger injury)). The ALJ was therefore entitled to disbelieve Plaintiff's description of severe cognitive impairment as inconsistent with Plaintiff's successful years of work history. *See Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider ... inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.")

### Daily Activities

The ALJ briefly mentions Plaintiff's daily activities as inconsistent with his allega-

tions, but the ALJ does not specify which activities contradict which allegations. (AR 24.) Earlier in the decision, however, the ALJ did summarize Plaintiff's daily activities—caring for his daughter and son, watching television and playing video games, caring for a cat, taking care of personal needs, shopping for groceries and preparing meals, washing dishes, driving—and concluded that Plaintiff's ability to complete those activities demonstrates "mild restriction." (AR 21.) The ALJ was entitled to consider those activities for purposes of evaluating Plaintiff's credibility, and reasonably found that his own description of daily activities was inconsistent with his description of a complete inability to work. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.2001) (explaining that inconsistencies in a claimant's testimony are properly considered in assessing a claimant's credibility).

*Lack of Mental–Health Treatment or Medications*

The ALJ also cited Plaintiff's lack of treatment or medication related to his psychiatric or mental-health symptoms:

> If an impairment can reasonably be controlled by medication or treatment, it cannot serve as a basis for a finding of disability. (20 CFR 404.1530). He indicated that he is not taking any medications for any psychiatric symptoms. The claimant is not seeking or receiving frequent medical treatment, which tends to undermine his allegations of incapacitating symptoms. He reported that he does not receive regular medication treatment or receive any treatment from a mental health professional.

(AR 24–25.) It is unclear precisely which "incapacitating symptoms" the ALJ had in mind here. Assuming that the ALJ is referring to Plaintiff's depression, it is true that Plaintiff has not received treatment or medication for his depression—and this could be a reason to discount Plaintiff's

brief descriptions of depression symptoms. (AR 221, 237.) For the most part, Plaintiff's testimony and statements emphasized his physical injuries and his cognitive impairments. *See* AR 60 (Plaintiff's hearing testimony describing his cognitive impairments as the main reason why he cannot work); AR 175 (Plaintiff's statement describing his physical injuries and his cognitive impairments as limiting his ability to work). But to the extent that Plaintiff also described depression symptoms, his lack of treatment and medication for those symptoms is a clear and convincing reason to discount his subjective description.

As a final comment on the ALJ's credibility analysis, the Court notes that the Plaintiff has not identified any particular testimony that he contends was either erroneously rejected or clearly establishes disability; indeed, the ALJ's RFC assessment accounts for Plaintiff's cognitive impairments and right-hand limitations, at least to some degree. The ALJ's adverse credibility finding may have been superfluous, given that Plaintiff's specific descriptions of impairments are not wholly inconsistent with the ALJ's RFC assessment. But to the extent that Plaintiff testified that he was entirely unable to work, the Court finds that the ALJ provided clear and convincing reasons to discount his credibility and thus did not err.

*Lay Witness Evidence*

The record contains written statements from lay witnesses Della Mydske and Judy Munn. Ms. Mydske described Plaintiff's functioning in one statement dated March 6, 2007, and another questionnaire dated November 23, 2009. (AR 203–11, 244–49.) The ALJ did not mention Ms. Mydske's statements in his written decision.

The ALJ briefly refers to Ms. Munn's report that Plaintiff has a learning disability but also "excellent visual learning skills." (AR 20 (citing AR 365).) Plaintiff

contends that the ALJ overlooked Ms. Munn's statement that Plaintiff's "disabilities are obviously a factor in preventing him from obtaining employment in the private sector." Dkt. 13 at 21 (citing AR 365).

*Legal Standards*

■ Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater,* 80 F.3d 1273, 1288–89 (9th Cir.1996) (finding rejection of testimony of family members because, *inter alia,* they were "understandably advocates, and biased" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993)).

■ However, the failure to disregard lay testimony without comment may be deemed harmless. An error is harmless where it is " 'inconsequential to the ultimate nondisability determination.' " *Molina v. Astrue,* 674 F.3d 1104, 1122 (9th Cir.2012) (quoting *Stout v. Comm'r, Social Sec. Admin.,* 454 F.3d 1050 1055 (9th Cir. 2006)). As recently held by the Ninth Circuit, " 'an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.' " *Id.* at 1122 (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir.2011); also describing harmless error as occurring where an "ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony[.]") The Ninth Circuit distinguished its prior decision in *Stout,* wherein the

Court held that failure to address lay testimony may not be deemed harmless where "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination[,]" as involving lay testimony identifying limitations not considered by the ALJ, uncontradicted by anything in the record, and highly probative of an individual's inability to work in a competitive environment. *Id.* at 1056.

*Ms. Mydske's Statements*

The Commissioner concedes that the ALJ did not address Ms. Mydske's statements in the written decision, but argues that the error was harmless because her testimony could be rejected for the same reasons that the ALJ rejected Plaintiff's testimony. Specifically, the Commissioner contends that Ms. Mydske's description of Plaintiff's activities was inconsistent with a description of debilitating symptoms, and that her description of his abilities is inconsistent with his work history.

■ The Court cannot find the ALJ's failure to consider Ms. Mydske's statements to be harmless, however, because Ms. Mydske provided more detailed descriptions of Plaintiff's abilities than Plaintiff himself provided. Ms. Mydske provided specific examples of Plaintiff's impaired memory; described Plaintiff's neck, knee, and hip pain; and detailed Plaintiff's lack of "common sense" and difficulty understanding instructions, and inability to stay on task. (AR 244–49.) She also described Plaintiff's right index finger as "not working at all." (AR 245.) Ms. Mydske's statements are not merely reiterations of Plaintiff's own statements, and the ALJ's reasons for discounting Plaintiff's testimony do not apply equally well to Ms. Mydske's statements. The ALJ's failure to address Ms. Mydske's statements was therefore not harmless. *See Molina v. Astrue,* 674 F.3d 1104, 1121–22 (9th Cir.

2012) (holding that an ALJ's failure to comment upon lay witness testimony describing the same limitations as the claimant described is harmless where the same evidence that the ALJ referred to in discrediting the claimant's testimony applies to the lay testimony). On remand, the ALJ shall consider Ms. Mydske's statements, explicitly address the weight to be given the statements, and, if necessary, reconsider the effect of Ms. Mydske's statements on any other findings.

*Ms. Munn's Letter*

Ms. Munn was a vocational rehabilitation counselor in Washington's Department of Social and Health Services' vocational rehabilitation division, and wrote a letter on Plaintiff's behalf on October 24, 1986, to recommend him for employment at a U.S. Naval base in Bremerton, Washington. (AR 365.) Ms. Munn wrote, in pertinent part:

> Don has a Specific Learning Disability (a developmental reading and language disorder). He has excellent visual learning skills, but he has functional limitations learning information auditorily. His training should take into consideration that he learns very well by demonstration and written instructions that are not of a complex nature.

> Don's disabilities are obviously a factor in preventing him from obtaining employment in the private sector.

(AR 365.) The ALJ referred to Ms. Munn's description of Don's limitations in the first quoted paragraph, but Plaintiff contends that the ALJ erred by not referencing the second quoted paragraph.

▮ The Court disagrees with Plaintiff. The second quoted paragraph contains an opinion beyond Ms. Munn's field of expertise, and the opinion is of questionable value to the ALJ's findings in the five-step disability evaluation process. Whether Plaintiff's impairments prevent him

from performing a job is one of the issues reserved to the Commissioner. *See* SSR 96–5p, 1996 WL 374183 (Jul. 2, 1996). Thus, the ALJ did not err in failing to discuss Ms. Munn's opinion regarding the effect of Plaintiff's disabilities on his employability.

### CONCLUSION

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel,* 211 F.3d 1172, 1179 (9th Cir.2000). Upon remand, the ALJ should either make further findings regarding Plaintiff's ability to perform reasoning level 2 jobs, or obtain further VE testimony regarding alternative occupations that Plaintiff could perform. The ALJ should also discuss the lay witness statements of Ms. Mydske.

For the reasons set forth above, this matter should be REVERSED and REMANDED for further administrative proceedings.

September 12, 2012.