

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2004

# Money v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2553

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Money v. Comm Social Security" (2004). *2004 Decisions.* Paper 980.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/980

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No: 03-2553


KATHERINE N. (TAYLOR) MONEY,

Appellant

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY


Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 01-1806)
District Court: Hon. Gustave Diamond


Submitted Pursuant to Third Circuit LAR 34.1(a)
February 12, 2004


Before: SCIRICA, ROTH and McKEE, Circuit Judges.


(Filed February 25, 2004)


OPINION


McKEE, Circuit Judge.

This case arises from the denial of Katherine N. Money's application for disability

insurance benefits and supplemental security income under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401-433 and 1381-1381(c) ("Act").  Money appeals the

1

district court's order granting summary judgment in favor of the Commissioner of the Social Security Administration. For the reasons that follow, we will affirm.

## I.

Inasmuch as we write only for the parties it is not necessary to recite the facts of this case in detail. Money presents three claims to this court: she argues that the ALJ's decision adopted by the Appeal's Council was not supported by substantial evidence, did not comply with the Council's August 1998 order, and failed to account for the additional medical evidence that the Council added into the record on the initial appeal. Each claim is considered separately.[1]

### A. Substantial evidence for the decision

Money argues that the Commissioner's final decision was not supported by substantial evidence on the record as a whole for five reasons. We disagree, and address each of her reasons seriatim.

---

[1] We have jurisdiction over this motion to dismiss under 28 U.S.C. § 1291. *Fargnoli v. Halter*, 247 F.3d 34, 36 (3d Cir. 2001). We exercise plenary review over decisions to grant and deny motions for summary judgment. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). This means that we exercise de novo review of all legal questions presented by the Commissioner's final judgment, but review the factual findings only to see if they are supported by substantial evidence in the record. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate. Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. *Fargnoli*, 247 F.3d at 38.

**1. Step three of the sequential process**[2]

Money states that the ALJ erred when evaluating her under the listing for organic brain disorders, Listing 12.02, in step three of the sequential evaluation of disability claims. She argues that the ALJ ignored neuropsychological test results in the record; failed to obtain current neuropsychological tests; and discounted or misunderstood evidence proving she had brain damage.

A claimant must show that his or her impairment matches a listing to succeed at step three in the process. An impairment matches a listing only when it meets all of the listing's specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Money therefore had to prove that she met all of Listing 12.02's criteria. Listing 12.02 has two groups of criteria, "A" and "B," each of which had to be met. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.02. The ALJ found that she met the Group A criteria but not those in Group B. Group B requires her impairment to result "in at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration,

---

[2] When evaluating whether a claimant is disabled, the ALJ must answer the following five inquiries in this order: whether (1) the claimant is currently engaged in substantial gainful activity; (2) he or she has a severe impairment; (3) this impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) this impairment prevents him or her from performing his or her past relevant work; and (5) he or she can perform any other work which exists in the national economy, in light of his or her age, education, work experience, and residual functioning capacity. 20 C.F.R. §§ 404.1520, 416.920.

persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration. . . ." The only concrete evidence offered by Money to prove that she met the group B criteria is one of her treating physicians' diagnoses of "multi-infarct dementia" on a state employability assessment form. It is unclear whether it necessarily follows that she meets the Group B criteria simply because she has this diagnosis. The ALJ adduced evidence from Money's own testimony and that of her physicians that she did not meet the Group B criteria. The ALJ's opinion was based on substantial evidence and applied the correct law.

**2. The treating physicians' opinions on residual functional capacity**

Money argues that the ALJ failed to defer to the opinions of her treating physicians which were based on objective clinical evidence regarding her remaining functional capacity ("RFC"). She states that this failure calls into question the ALJ's finding that she could perform light work, and she argues that the district court should have remanded her claim to correct this error.

Controlling weight is given to the opinion of a claimant's treating physician regarding the nature and severity of the claimant's impairment when, among other things, it is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416. 927(d)(2). Here, the ALJ found that the opinions of Money's treating physicians were both internally inconsistent and inconsistent with other medical evidence. As a result, their opinions were not entitled to controlling weight. Because they were not entitled to

such weight, the ALJ could evaluate and weigh them against other medical evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927)(d).

## 3. Hypothetical posed to vocational expert

Money argues that the testimony offered by the vocational expert ("VE") in response to hypothetical questions that the ALJ posed to him were not substantial evidence. She claims that the hypothetical did not include her specific impairments.

An ALJ's hypothetical question to a VE must accurately portray the claimant's individual impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). As stated above, her treating physicians' opinions were not undisputed and were not fully accepted by the ALJ. The ALJ determined that Money could perform light work that did not require pushing, pulling or fine manual dexterity with her right hand, or complex and varied job tasks. The ALJ then incorporated these impairments in a hypothetical question he posed to the VE. His hypothetical met the requirements in *Chrupcala*, and he therefore properly used the VE's testimony in response to this hypothetical question.

## 4. Vocational expert testimony's conflict with the Dictionary of Occupational Titles

Money argues that the VE's testimony conflicts with the descriptions of the jobs in the Dictionary of Occupational Titles (DOT), thereby creating errors in steps four and five of the sequential analysis. She claim that the district court should have remanded her claim to correct these errors. She believes that the error in step four occurred when the

5

ALJ did not reconcile the VE's description of Money's past relevant work as unskilled, entry-level work requiring "medium" exertion with the DOT's classification of it as "light" skilled work requiring three to six months' training and reasoning level 2. The second alleged error was that, given the ALJ's assessment of her RFC, the DOT indicates that none of the jobs that the VE listed would be appropriate for her.

It appears that Money argued to the district court that reconciliation was required by Social Security Ruling 00-4p, which states that ALJs must resolve conflicts between the DOT and VEs' testimony. The district court correctly noted that the ALJ was not bound by this ruling when he rendered this decision in 1999 because SSR 00-4p was not effective until December 2000. Perhaps as a result, Money mentions SSR 00-4p on appeal but concedes that we do not need to apply it here. She argues persuasively that this court has endorsed reconciling conflicts between VEs' testimony and the DOT definitions even in claims not governed by SSR 00-4p. *See Burns v. Barnhart*, 312 F.3d 113, 126-27 (3d Cir. 2002). We do not need to decide this question, though, because the district court's decision to affirm stands even if such reconciliation was needed.

Money apparently did not raise the first issue regarding the error in step four to the district court, and it is therefore waived. *See Gass v. V.I. Telephone Corp.*, 311 F.3d 237, 246 (3d Cir. 2002) (holding that issues not raised before a district court are waived on appeal). Looking at this issue on the merits, this argument is still unavailing because Money cannot prove that this error caused any harm. Even if he did not reconcile the

6

VE's description of her past relevant work with the DOT's description of it, the ALJ still came to a conclusion favorable to her, that she could not perform the job that was her only past relevant work experience.

Because Money raises the second issue regarding step five properly, we analyze it on its merits and again assume that the ALJ should have reconciled the VE's testimony with DOT testimony. In response to the hypothetical including the criteria in the ALJ's RFC for Money, the VE listed material handler, order filler, shoe dyer/cleaner, kitchen worker, cleaner, and inserting machine operator. Money argues that under the DOT's definitions of these jobs, none of them meet her RFC for "simple, routine and repetitive" work as determined by the ALJ. She states that, in the DOT, all six jobs except for cleaner require reasoning levels 2 or 3, so they do not comply with the ALJ's mandate that her work be "simple." She also states that the first three of those six jobs were listed in the DOT as skilled or semi-skilled, rather than unskilled, although there was no evidence on the record regarding any transferrable skills she might have. Finally, she states that the DOT states that three of the jobs entail more than the "light work" that her RFC calls for: the material handler job entails "heavy work," and the kitchen worker and shoe cleaner jobs entail "medium work." Money argues that this leaves only the job as a cleaner.[3]

---

[3] Money also states that it is unclear which DOT job the VE meant when he stated "cleaner" because there are about 32 jobs labeled "cleaner" in the DOT. However, there is only one listing whose title officially states only "cleaner" in the DOT, listing 323.687-

Money makes the assumption that even a reasoning level of 2, where 1 is the lowest possible level of reasoning, is incompatible with the ALJ's decision in her RFC that her jobs must be simple. However even level two only requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations."[4] Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive.

Allowing for jobs requiring reasoning levels 1 and 2, for unskilled workers who can do only light work, three of the six jobs that the VE listed still meet the ALJ's stated RFC for Money under the DOT definitions. They are inserting machine operator, DOT No. 208.685-018; cleaner, DOT No. 323.687-014; and silver wrapper, one of the kitchen worker jobs, DOT No. 318.687-018.[5] Therefore, the district court correctly found that

---

014; the other listings are for "washer (alternative title: cleaner)" whose cleaning involves industrial equipment, or jobs such as "seed cleaner" in the agricultural worker listing and "acid-tank cleaner" in a refinery. *See* DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF ADMINISTRATIVE LAW JUDGES (4th ed. 1991), *at* http://www.oalj.dol.gov/libdot.htm.

[4] *See* "Appendix C: General Education Development," in DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF ADMINISTRATIVE LAW JUDGES (4th ed. 1991), *at* http://www.oalj.dol.gov/public/dot/refrnc/dotappc.htm.

[5] *See* "Clerical and Sales Occupations"*in* DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF ADMINISTRATIVE LAW JUDGES (4th ed. 1991), *at* http://www.oalj.dol.gov/public/dot/refrnc/dot02a.htm; "Service Occupations" *in* DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF ADMINISTRATIVE LAW JUDGES (4th ed. 1991), *at* http://www.oalj.dol.gov/public/dot/refrnc/dot03a.htm.

many of the jobs identified by the VE met the limitations set in Money's RFC.

**5. Developing the record on Money's organic mental disorders**

Money argues that the ALJ should have further developed the record to ensure a complete record on which to determine if she was disabled, and that the district court erred when it failed to remand her claim for further record development. Specifically, she claims that the ALJ should have allowed her to have a medical expert testify and granted her request for current neuropsychological testing for cognitive deficits because he was evaluating her under Listing 12.02.

The burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. §§ 404.1512(a) and 416.912(a). The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled. 20 C.F.R. §§ 404.1512(d), 416.912(d). Such a history is defined as records of the claimant's medical sources for at least 12 months preceding when the claimant filed the application for disability benefit unless the claimant states that his or her disability began less than 12 months before the application was filed. *Id.* Only if the evidence before the Commissioner is insufficient does the ALJ have the duty to attempt to obtain additional evidence to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

9

Money alleges that her disability began in July 1994, shortly after a car accident she had on June 26, 1994. The ALJ evaluated medical records dated from July 1994 through February 1996, about 2.5 years, in addition to other records from 1999 including a consultative examination ordered by the ALJ. This meets the standard for a "complete medical history" in 20 C.F.R. §§ 404.1512(d) and 416.912(d). Nothing else indicates that the record lacked enough data for the ALJ to make a well-informed decision about whether Money was disabled. Although Money might want the additional evidence she mentioned and it might help the ALJ make an even more informed decision, such evidence was not necessary. The district court correctly denied Money's request for remand on this basis.

## B. Following the Council's August 1998 order

Money argues that the second ALJ failed to heed the Council's holding that her right hand impairment precluded her from performing jobs requiring bilateral manual dexerity, and that the district court erred when it failed to remand her claim to the Commissioner so it could comply with the holding or explain why it failed to comply. We disagree. The district court properly found that "the record is clear that the ALJ complied with all of the instructions set forth in the Appeals Council's remand order and took no action inconsistent with that order. (R. 306-309.)" Order at 12.

The Council's holding stated:

The Council believes that the claimant's right hand difficulties do represent a significant nonexertional limitation. . . . The Council believes that this severe

10

dominant hand impairment which precludes the claimant's ability to perform jobs requiring bilateral manual dexterity cannot be considered insignificant and that vocational evidence is needed to determine the extent to which the claimant's nonexertional limitations erode the occupational base for work.

Decision at 2.

The ALJ gave significance to the hand impairment in his step three analysis, finding that Money had the RFC to perform "a wide range of simple, routine and repetitive light work activity, not involving pushing, pulling or fine manual dexterity with the right dominant upper extremity." He took vocational evidence regarding Money's hand impairment: he included this limitation on manual dexterity in the hypothetical to the VE as discussed above.

## C. Accounting for the additional medical evidence the Council added to the record

Money argues that the Council should have explained why it adopted the second ALJ's opinion even after it added exhibits to the record, and that the district court erred when it failed to remand her claim to the Council for such an explanation. We disagree.

First, because she failed to raise this argument before the district court, Money waived her right to raise it before now. *See Gass*, 311 F.3d at 246. Second, Money appears to think she is entitled to review by the Appeals Council. The regulations do require the Council to evaluate the entire record including the new and material evidence submitted, but do not require it to grant review unless it finds that the ALJ's decision "is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). The Council can admit the evidence into the record but does not have to provide written

11

review of this evidence unless it grants formal review of the ALJ's decision. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).

We have already decided that the only way that the new evidence could be reviewed in this situation would be on remand to the Commissioner. Such a remand could only take place if it met the criteria listed in Section 405(g) of the Act. *Id.* at 592-93. The district court here properly used these 405(g) factors to analyze whether the new evidence at issue required remand. It found that the petitioner did not offer any reasons why the evidence was material or why the evidence had not been generated in time to put into the record before the ALJ. This conclusion is supported by the record, which is bereft of any such explanations. The district court correctly concluded that it could not remand this claim to the Commissioner for consideration of this evidence because the evidence did not meet the criteria for remand under 405(g).

## II.

For all of the above reasons, we will affirm the district court's judgment.