**Karen A. MELONI, Plaintiff,**

v.

**Carolyn COLVIN, Commissioner of Social Security, Defendant.**

**Civil Action No. 4:14–CV–397**

United States District Court,
M.D. Pennsylvania.

Filed July 2, 2015

David F. Chermol, Chermol & Fishman, Philadelphia, PA, for Plaintiff.

G. Michael Thiel, U.S. Attorney's Office, Scranton, PA, for Defendant.

**ORDER**

Matthew W. Brann, United States District Judge

AND NOW, this 2nd day of July 2015, having reviewed the thorough report and recommendation of Magistrate Judge Gerald B. Cohn and the letter from the Commissioner waiving the opportunity to object, the report and recommendation of the Magistrate Judge is ADOPTED. March 27, 2015, ECF No. 16. The decision of the Commissioner is VACATED and REMANDED.

The Clerk is directed to close the case file.

*REPORT AND RECOMMENDATION*

GERALD B. COHN, UNITED STATES MAGISTRATE JUDGE

### I. Introduction

■ The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Karen A. Meloni for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 401–433, 1382–1383 (the "Act"). In this case, the administrative law judge ("ALJ") determined that Plaintiff was not disabled because she was able to perform .other work in the national economy pursuant to testimony from a vocational expert ("VE"). However, the testimony of the VE with regard to every position identified conflicted with the Dictionary of Occupational Titles ("DOT"). Social Security Ruling ("SSR") 004–p provides that ALJ's have "an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will ask the VE or VS if the evidence she has

provided conflicts with information provided in the DOT." *Id.* Social Security Rulings are binding on the ALJ. 20 C.F.R. § 402.35(b)(1). However, the ALJ in this case did not ask the VE whether the VE testimony conflicted with the DOT. Thus, the conflict between the VE testimony and the DOT was unresolved. Where there is an apparent, unresolved conflict between the VE testimony and the DOT with regard to every position identified by the VE, the ALJ's determination that a claimant can perform other work in the national economy lacks ` substantial evidence. *Boone v. Barnhart,* 353 F.3d 203 (3d Cir. 2003). As a result, the Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

### II. Procedural Background

On September 2, 2009, Plaintiff filed an application for SSI and DIB under the Act. (Tr. 137–48). On March 17, 2011, the Bureau of Disability Determination denied these application (Tr. 76–80), and Plaintiff filed a request for a hearing on May 5, 2011. (Tr. 102–03). On July 5, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 41–75). On August 17, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 12–40). On September 27, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 10–11), which the Appeals Council denied on November 11, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 5–9).

On March 4, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On May 9,

2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On June 23, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 12). On July 28, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). On August 8, 2014, Plaintiff filed a brief in reply. (Doc. 14). On November 5, 2014, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III. Standard of Review

■ When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir.2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir.2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

### IV. Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

■ The disability determination involves shifting burdens of proof. The

claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V.  Relevant Facts in the Record

Plaintiff was born on September 3, 1964 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 31). Plaintiff has at least a high school education and past relevant work as a tax preparer, retail clerk, and office assistant. (Tr. 31). Plaintiff worked from the years 1994 to 2000 and 2002 to 2005. (Tr. 197). In 2008 and 2009, she worked from January through April as a tax preparer. She alleges disability as of April 15, 2009, when she last worked as a tax preparer. (Tr. 197).

### A.  Physical Impairments

On April 29, 2008, Plaintiff complained to Dr. Rodrigo Tanchano, M.D., her primary care physician, of recurrent back pain and numbness and tingling in her hands. (Tr. 511). She reported that her arm was painful. (Tr. 511). On May 2, 2008, a preliminary EMG report indicated bilateral cervical radiculopathy with no other abnormality. (Tr. 527). The report recommended following-up with an MRI. (Tr. 257). On May 12, 2008, Plaintiff continued to complain of moderate to marked back pain that arose gradually over the previous days. (Tr. 515). She had "no previous workup for this problem." (Tr. 515). Plaintiff had reduced range of motion, tenderness, and a slow gait. (Tr. 516). Dr. Tanchano prescribed Vicodin

and referred Plaintiff to physical therapy. (Tr. 516). Radiology studies in 2008 and 2009 indicated "central disc protrusion at L5–S1 causing mild canal stenosis," "moderate decreased disc space at L5–S1," "dark disc disease," and "indentation on the cervical cord." (Tr. 265, 281–82).

In September of 2009, Plaintiff was referred to pain management with Jie Zhu, M.D. (Tr. 274). Plaintiff treated with Dr. Zhu for pain management from October 2009 through May 2012 (Tr. 306–14, 579–86, 627–61, 715–97). Plaintiff obtained some relief from pain medications and injections. (Tr. 299, 328–29, 640, 644–45, 647, 715, 717, 760–62, 767–68,774–75). She denied side effects from medications. (Tr. 628, 632–33, 636, 642, 650, 717, 721, 725, 729, 739, 743, 747, 751, 755, 762, 769, 776, 783, 788, 793). Dr. Zhu noted only tenderness on examinations. (Tr. 309, 313, 620–21, 625, 630–31, 634–35, 638–39, 644–45, 651–52, 718–19, 723, 726–27, 731, 737, 741, 745, 749–50, 753–54, 757–58, 764–65, 771–72, 779, 786, 791, 796–97). In March 2011 and June 2012, Dr. Zhu issued opinions that Plaintiff had work-preclusive limitations due to her lower back pain, such as absences more than four times per month and being only to rarely lift ten pounds. (Tr. 704–07, 870–74).

In May 2010, John Pataki, M.D., a state agency physician, opined that Plaintiff could perform a limited range of light work (Tr. 612–17). In March 2011, Anne Aldridge, M.D., another state agency physician, reviewed the evidence in connection with Plaintiff's request for reconsideration and affirmed Dr. Pataki's assessment (Tr. 702).

On September 21, 2010, Plaintiff underwent a posterior spinal fusion at L5–S1 with Dr. Ronald Sabbagh. (Tr. 923). Plaintiff had "had aggressive conservative care including multiple pain management physicians, multiple attempts at physical

therapy with no improvement," and was "on high-dose narcotic medications." (Tr. 923). He noted that Plaintiff had an "essentially normal MRI of the neck and degenerative disc at L5–S1." (Tr. 931). On November 11, 2010, Plaintiff reported to Dr. Sabbagh that she did not feel the surgery worked, but he let her "know that she shouldn't get discouraged" as it had "only been six weeks since her surgery that she is doing well enough that she has no restrictions. She can resume activities as tolerated." (Tr. 928). He instructed her to follow-up on an as-needed basis. (Tr. 928).

On June 13, 2011, Plaintiff had a trial of a spinal cord stimulator that she tolerated poorly, but provided her with 85% coverage, 90% pain reduction, much better sleep quality, some improvement of daily activity, and some reduction of breakthrough medication. (Tr. 745). However, she reported on June 17, 2011 that she was unable to get the stimulator implanted until her mother could "come over to help her." (Tr. 746). On December 16, 2011, Dr. Zhu noted that Plaintiff was "pending for neurostimulator implant but is unable to get at this time due to social/family stressor. She has recently loss her home in August of 2011 and rotates her residence with family members." (Tr. 762). On January 16, 2012, Plaintiff was treated with a cervical facet joint nerve ablation. (Tr. 774).

### B. Mental Impairments

On July 9, 2008, Plaintiff followed-up with Dr. Tanchano. (Tr. 520). She reported worsening depression and mood swings, and she felt "the same as when she ended up in the hospital." (Tr. 520). Dr. Tanchano increased her Cymbalta and continued her Xanax. (Tr. 521). Plaintiff's "anxiety remain[ed] stable." (Tr. 521).

Through August of 2010, Plaintiff continued to follow-up with Dr. Tanchano for her depression and anxiety. On October 12, 2009, Plaintiff reported worsening depression and back pain to Dr. Tanchano. (Tr. 563). He added Welbutrin to her medication regimen and continued her Cymbalta and Xanax. (Tr. 564–65). In March of 2010, she continued to display a depressed affect, and he added Zoloft to her medication regimen. (Tr. 507). Plaintiff continued to take Xanax and Wellbutrin. (Tr. 501).

On May 10, 2010, state agency psychologist Dr. Alvin Smith, Ph.D., reviewed Plaintiff's file and issued an opinion. (Tr. 601–11). He opined that Plaintiff had no restriction of activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 609). He opined that Plaintiff's mental impairments were not severe and caused her "no limitations." (Tr. 609).

Plaintiff was treated at Mid–Atlantic Behavioral Health from August 2010 through June of 2012. (Tr. 662–95. 802–69). She displayed moderate to severe depression and anxiety symptoms and was assessed GAFs in the fifties. (Tr. 663, 665, 666, 668–70, 672, 674, 677, 679, 681, 683, 685, 687, 691–92, 695, 803, 805, 807, 809, 811, 813, 815, 817–19, 821, 823, 825, 827, 829–30, 832, 834, 837–38, 840, 842, 845, 847–48, 851, 853, 855). In February of 2011, Plaintiff's treating psychiatrist, Dr. Elena Shabash, M.D., opined that Plaintiff was "unable to meet competitive standards" in almost all work functions. (Tr. 698). Dr. Shabash cited "severely impaired memory," "concentration (not able to perform serial sevens)," and being unable "to control emotions, frequent crying spells," as explanation for these limitations. (Tr. 699). She also opined that Plaintiff's psychiatric impairments made her more sensitive to pain. (Tr. 699).

She opined that Plaintiff had "extreme" difficulties in maintaining social functioning, "marked" difficulties in maintaining concentration, persistence, or pace, and had experienced four or more episodes of decompensation in a twelve month period. (Tr. 700). She opined that Plaintiff would be absent from work more than four times per month. (Tr. 701).

On March 17, 2011, state agency psychologist Dr. Christopher King, Psy.D., reviewed Plaintiff's file and issued an opinion affirming Dr. Smith's May 10, 2010 assessment. (Tr. 703).

### C. Testimony and Findings

On July 5, 2012, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 32). Plaintiff described her impairments, symptoms, and limitations. (Tr. 43–68). A vocational expert ("VE") also appeared and testified. (Tr. 68). The VE testified that, given the ALJ's RFC described below, Plaintiff could perform work as an order caller, DOT # 209.667–014; routing clerk, DOT # 222.587–038; final inspector, DOT # 727.678–054; surveillance system monitor, DOT # 379.367–010; type copy editor, DOT # 979.687–026; and document preparer, DOT # 249.587–018. (Tr. 68–70).

On August 17, 2012, the ALJ issued the decision. (Tr. 33). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2009, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff's cervical and lumbar back disorder, asthma, tobacco abuse, and chronic pain syndrome were medically determinable and severe. (Tr. 17). At step three, the ALJ determined that Plaintiff did not meet or equal a Listing. (Tr. 21). The ALJ found that Plaintiff had the RFC to perform light work, sitting up to six hours of an eight-hour work day and standing or walking between two and six hours in an eight-hour work day, occasionally stoop, squat, crouch, kneel, crawl, balance, climb stairs, reach overhead or in any direction, avoid exposure to hazards, cost, dues, fumes, gases, or vibrations, limited to unskilled work with no more than simple 1 and 2 step instructions. (Tr. 27). At step four the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 31). At step five, the ALJ found that Plaintiff could perform other work in the national economy as an order caller, DOT # 209.667–014; routing clerk, DOT # 222.587–038; final inspector, DOT # 727.678–054; surveillance system monitor, DOT # 379.367–010; type copy editor, DOT # 979.687–026; and document preparer, DOT # 249.587–018. (Tr. 31). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 31).

## VI. Plaintiff Allegations of Error

### A. Conflict between DOT and VE testimony

Plaintiff asserts that the ALJ's RFC assessment lack substantial evidence because there was an apparent, unresolved conflict between the VE testimony and the DOT for every position identified by the VE. The ALJ did not ask the VE whether there was a conflict between the VE testimony and the DOT. This violates SSR 00–4p, which states:

The Responsibility To Ask About Conflicts

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

- Ask the VE or VS if the evidence he or she has provided conflicts

with information provided in the DOT; and

- If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* In the Third Circuit, where there is an apparent, unresolved conflict about every position identified by the VE, remand is generally required. *See Boone v. Barnhart,* 353 F.3d 203, 208 (3d Cir.2003), as amended (Dec. 18, 2003) (Remanding where, "according to the DOT, [claimant could not] perform any of the occupations identified by the VE"); *cf. Rutherford v. Barnhart,* 399 F.3d 546, 557 (3d Cir.2005) (Declining to remand where "inconsistencies [were] not present as to each of the jobs that the expert did list").

Here, Plaintiff asserts that:

According to the Dictionary of Occupational Titles (Dep't. of Labor, 4th ed., 1991) (DOT), every job identified in the ALJ's decision (Tr. 32), with the exception of surveillance system monitor, requires frequent reaching. See DOT # 209.667–014 (order caller), # 222.587–038 (router); # 727.687–054 (final inspector); # 979.687–026 (type-copy examiner); and # 249.587–018 (document preparer), while the ALJ's RFC finding allows only "occasional reaching overhead or in any direction" (Tr. 27). See

Social Security Ruling (SSR) 83–10, 1983 WL 31251 *5–6 (defining occasional as very little up to 1/3 of the time, and frequent as 1/3 to 2/3 of the time).

(Pl. Brief at 6).

Defendant responds that there is no conflict between "frequent" and "occasional" reaching because they overlap; occasional means up to one-third of the time, and frequent means one-third to two-thirds. (Def. Brief at 21–23). However, "[t]he terms 'frequently' and 'occasionally' are ascribed particular meanings in the vocational context." *Davis v. Astrue,* 741 F.Supp.2d 582, 590 (D.Del.2010). As the Court in *Davis* explained:

This distinction is not inconsequential, particularly when it pertains to limitations on one's ability to use one's hands. As defendant has noted, significant limitations on a person's ability to use their hands for such tasks as manipulating, fingering or handling can erode an entire occupational base.[6] *See* SSR 96–9p, 1996 WL 374185 (S.S.A. July 2, 1996) ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."); SSR 83–14, 1983 WL 31254 at *4 ("[A] limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant ... warrants a conclusion of "Disabled.").

*Davis v. Astrue,* 741 F.Supp.2d 582, 591 (D.Del.2010). *See also Shears v. Barnhart,* CIV.A. 05–3713, 2006 WL 1641635, at *1 (E.D.Pa. June 9, 2006) (Where "positions require constant or frequent handling and fingering" and claimant "was limited by the ALJ to occasional handling and fingering," there is an apparent conflict that must be resolved by the VE). The undersigned is persuaded by the above reasoning. Given that the ALJ did not

even ask the VE whether there was a conflict with the DOT, the Court cannot assume that the minimal overlap between "frequent" and "occasional" suggests that these jobs remained in sufficient number to provide substantial evidence to the ALJ's step five finding.

The conflict between frequent and occasional reaching leaves only the position of surveillance system monitor remaining. However, Plaintiff further asserts that:

> Further, according to the DOT, every job identified in the ALJ's decision, including surveillance system monitor, requires the reasoning ability to understand and carry out more than the "simple 1 and 2 step instructions" identified in the ALJ's RFC finding (Tr. 27). See DOT # 209.667–014 (order caller), # 222.587–038 (router); # 727.687–054 (final inspector); # 979.687–026 (type-copy examiner); # 249.587–018 (document preparer); # 379.367–010 (surveillance system monitor). The DOT defines jobs requiring the ability to understand and carry out "simple one- or two-step instructions" as Reasoning Level 1 jobs. See, for example, DOT # 230.667–014 (telephone· directory deliverer). By contrast, Reasoning Level 2 jobs, such as the jobs of order caller, routing clerk, final inspector, and type-copy editor, identified by the ALJ (Tr. 32), require the reasoning ability to understand and carry out "detailed" instructions. See DOT # 209.667–014, # 222.587–038, # 727.687–054, 979.687–026. And, the jobs of document preparer and surveillance system monitor, identified by the ALJ (Tr. 32), require even higher Reasoning Level 3 abilities. See DOT # 249.587–018, # 379.367–010.

(Pl. Brief at 6). Defendant responds that it is not reasoning level, but specific vocational preparation ("SVP") level, that relates to "simple 1 and 2 step instructions."

(Def. Brief at 24). Defendant contends that, because the SVP for each job is only one or two, there is no conflict between the VE testimony and the DOT. (Def. Brief at 24). Plaintiff replies that the reasoning level, not SVP, relates to "simple 1 and 2 step instructions" because this limitation is contained in "the definition of reasoning level 1 work." (Pl. Reply at 7).

First, the parties dispute over whether SVP or reasoning level is the proper vocational category to assess a limitation to simple 1 and 2 step instructions demonstrates the importance of the ALJ questioning the VE regarding conflicts. The Court should not be interpreting vocational evidence in the first instance; that is the realm of a vocational expert. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir.2013) (Although a Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," review must be based on "the administrative record [that was] already in existence" before the agency, not "post-hoc rationalizations made after the disputed action"). Thus, Plaintiff has properly argued that the ALJ's failure to even ask about conflicts, much less resolve conflicts, precludes meaningful review.

Second, if the Court were to attempt to resolve this dispute, it would resolve it in favor of Plaintiff. Reasoning level 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." 230.667–014 TELEPHONE–DIRECTORY DELIVERER, DICOT 230.667–014. By definition, this relates to one-or-two-step instructions. By contrast, SVP level 1 requires a "[s]hort demonstration only." 230.667–014 TELEPHONE–DIRECTORY DELIV-

ERER, DICOT 230.667–014. Thus, the SVP refers to the training that would be needed for a position, not the nature of instructions that must be followed. As one District Court has explained:

DOT reasoning levels refer to informal and formal levels of education required for satisfactory job performance. *Id.* A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Meissl v. Barnhart,* 403 F.Supp.2d 981, 983 (C.D.Cal.2005). The DOT defines level-2 reasoning as the capacity to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations." *Money v. Barnhart,* 91 Fed.Appx. 210, 215 (3d Cir.2004) (citing Appendix C: General Educational Development, U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II at 1011 (4th ed.1991) (emphasis added). A reasoning level of 3 requires a person to " '[a]pply commonsense understanding to carry out *instructions furnished in written, oral, or diagrammatic form[,* and d]eal with problems involving *several concrete variables* in or from standardized situations.' " *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005) (quoting U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II at 1011 (4th ed.1991)) (emphasis added).

There is a growing consensus within this Circuit and elsewhere that "[w]orking at reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive." *Money v. Barnhart,* 91 Fed.Appx. 210 (3d Cir. 2004).*See e.g. Grasty v. Astrue,* 661 F.Supp.2d 515, 523–24 (E.D.Pa.2009) (Robreno, J.) (concluding the jobs named, with reasoning levels of 2, to be "entirely appropriate," where claimant was limited to simple, repetitive tasks, but not reaching the appropriateness of level–3 jobs for claimant); *Jones v. Astrue,* 570 F.Supp.2d 708, 715–16 (E.D.Pa.2007) (Pratter, J.) (finding no "apparent inconsistency") (and cases cited), aff'd, 275 Fed.Appx. 166 (3d Cir. 2008).*see also Hackett,* 395 F.3d at 1176 (finding "level-two reasoning appears more consistent with Plaintiff's RFC" limiting her to "simple and routine work tasks"); *Meissl v. Barnhart,* 403 F.Supp.2d 981, 983–85 (C.D.Cal.2005) (Larson, J.) (finding no inconsistency between level 2 reasoning and claimant's RFC limiting her to "simple, repetitive mental tasks").

In contrast, some courts have found a conflict between a VE's testimony that a claimant can perform a job with a reasoning level of 3 and an RFC limiting that claimant to "simple and routine work tasks." *Hackett,* 395 F.3d at 1176; *see also Etter v. Astrue,* No. 10–582–OP, 2010 WL 4314415, at *3 (C.D.Cal.2010) (Parada, Magistrate J.) (listing numerous district court cases within the Ninth Circuit finding a limitation to "simple, repetitive tasks" to be inconsistent with a reasoning level of 3); *McHerrin v. Astrue,* No. 09–2035, 2010 WL 3516433, at *3 (E.D.Pa.2010) (finding an unresolved conflict between a limitation to "simple, repetitive tasks" and testimony that claimant could perform her past work as a surveillance system monitor, requiring level–3 reasoning); *Green v. Astrue,* No. 10–468, 2010 WL 4929082, at *5 (W.D.Pa.2010) (Ambrose, J.) (finding that "reasoning level of 3 suggests mental demands beyond simple, repetitive, routine work"); *Estrada v. Barnhart,* 417 F.Supp.2d 1299, 1303–04 (M.D.Fla.2006) (Pizzo, Magistrate J.) (agreeing with claimant that "reasoning level 3 exceeds her limitation to simple interactions and tasks").

*Simpson v. Astrue,* CIV.A. 10–2874, 2011 WL 1883124, at *6 (E.D.Pa. May 17, 2011). Another Court in this District has rejected an identical argument with regard to the surveillance monitor position:

> Given the direct correlation of GED reasoning levels to abilities regarding instructions, we do not find persuasive Defendant's argument that the DOT's specific vocational preparation (SVP) levels govern this inquiry (Doc. 10 at 18). Thus, we will not further discuss Defendant's assertion that the SVP level of 2 for the Security Monitor position indicates the position is consistent with the limitation regarding simple, not detailed instructions. (*Id.*)

*Minichino v. Colvin,* 955 F.Supp.2d 366, 387 (M.D.Pa.2013) (Conaboy, J.). The Court acknowledges that another Court found that "[a]pplying 'commonsense understanding to carry out instructions' does not appear to be precluded by the limitation of 'simple, routine, repetitive tasks.'" *Geiser v. Astrue,* No. 10–1973, 2011 WL 3163219, at *12 (M.D.Pa. July 26, 2011). However, Plaintiff here was not limited to simple tasks; she was limited to simple instructions. In that respect, the reasoning levels must be read in context of the other levels. A reasoning level of three does not specifically address simple versus detailed instructions. However, a reasoning level of two is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations." *Money v. Barnhart,* 91 Fed.Appx. 210, 215 (3d Cir. 2004) (citing Appendix C: General Educational Development, U.S. Dep't of Labor, Employment & Training Admin., Dictionary of Occupational Titles, Vol. II at 1011 (4th ed.1991). A reasoning level of three is greater than a reasoning level of two. *Id.* If a reasoning level of two requires carrying out detailed instructions, then a

reasoning level of three also requires the ability to carry out detailed instructions. Consequently, it is inconsistent with a limitation to simple, one-or-two step instructions.

There is an apparent, unresolved conflict with regard to every position identified by the VE for either reaching or reasoning limitations. These conflicts are not harmless, because "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base" and the only position that remained despite the manipulative limitations, surveillance system monitor, exceeded Plaintiff's ability to handle only simple one-or-two-step instructions. SSR 96–9p; *supra.* Consequently, the ALJ's step five assessment lacks substantial evidence. The Court recommends remand for the ALJ to properly assess whether jobs exist in sufficient numbers in the national economy that Plaintiff can perform. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

### VII. Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1. The decision of the Commissioner of Social Security denying Plaintiff's social security disability insurance and supplemental security income benefits be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2. The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.